598-009-03-Burg Comm. School District 70 School District 70, County Mutal Insurance Company 50.1-019-019-03-Burg Comm. School District 70 County Mutal Insurance Company 50.1-019-019-03-Burg Comm. School District 70 Okay. It's really just this one. Okay. Okay. Okay. Okay. Formally, for the record, we're calling 519-009-03-Burg Community Consolidated School District Number 70 v. Country Mutual Insurance Company. Good morning. Good morning, Your Honors. I'm going to introduce the court, Cassandra Jones, on behalf of Defendant Appellant RSUI Indemnity Company for this Rule 304A appeal. Today, we're asking the court to overturn the rulings of the trial court and remand the case, directing the trial court to enter judgment in favor of RSUI on the duty to defend and indemnify. RSUI submits that three points of error are pervasive throughout the various orders entered in the trial court throughout this case's lengthy procedural history. First, the related claims provision that's found in the RSUI policy is not ambiguous and should be applied such that the Doe 4 action is deemed to be a claim first made before the policy period. Second, the reports of Hawkins abuse and prior lawsuits against the district and the plaintiffs in this case should have made plaintiffs aware of the substantial probability that more claims would be made by more Hawkins victims, making Hawkins-related matters a known loss under the RSUI policy. And third, that RSUI's additional policy-based offenses, including the sexual molestation exclusion and the bodily injury exclusion, should have been applied as no exception to those exclusions is relevant in this matter. How do you respond to the other side saying that it was up to RSUI to discover prior to writing the contract for insurance about Hawkins' prior past acts and lawsuits? Respectfully, Your Honor, the policy issue was actually issued to the Prairie State Insurance Cooperative, of which Freeberg joined in July of 2013. And in the Prairie State Insurance Cooperative, there are 134 discrete school districts. In an effort for economy, we rely, as the insurance company, on the applications and all the information submitted by the insured. And it was incumbent upon the insured in this case to notify RSUI that it had been sued in three previous occasions and that an Illinois State Police report, in fact, uncovered as many as 19 potential other Hawkins victims around the time that he took his life. Were there questions in that application process given to by RSUI asking for that information? I'm not sure how the entire application process was conducted. RSUI wrote that policy, that 2013 policy issue. It was the first one that it issued to the Prairie State Insurance Cooperative. And so I do know that there was a renewal application circulated. However, I'm not sure if that was RSUI's doing or if that was the cooperative's doing because the cooperative was simply trying to re-up its insurance and get new directors and officers insurance for that 2013 and 2014 policy year. And so it actually, its broker, Arthur J. Gallagher, did conduct an investigation into the Hawkins matters and determined it would not be a problem on a going-forward basis. And we take that to mean because in 2009, when Hawkins took his life, there could be no more occurrences for negligent supervision by the school district because there was nothing to supervise. And further on the claims-made side, which is what we're talking about, there were at least three prior lawsuits that say that the district was negligent in supervising Hawkins and failing to take any action on the matters that preceded his suicide. And so the related claims provision issue here is a hallmark in claims-made policies. It informs the insurer and the insured how to treat claims that are the same or related such that they're put in the correct policy year. And in some cases, or excuse me, in any case, if a claim is related back, the insurer only has to pay one deductible. So there's benefits to the insureds. There's benefits to the insurers. And what the district is relying on here is an ambiguity found in the trial court because per the trial court's order, the term related is susceptible to multiple interpretations. But critically, the district has never advanced a reasonable alternative application or any alternative application. So are you saying that there's an ambiguity? No, Your Honor. We don't believe that there's an ambiguity. I thought I was trying to understand. That's why. Okay. No, no. The district's argument is that there is an ambiguity because it could be susceptible to multiple interpretations. The underlying claimant dove for advancing alternative application. However, we don't think that that's applicable or that hypothetical was not proper for the actual facts in our case, as well as the trial court during the summary judgment hearing advancing a different potential application for the related claims provision. Importantly, none of those were ever advanced by the district. And in this particular case, the two alternative applications are an opposite to how the related claims provision is actually intended to apply. And several Illinois courts have applied related claims provisions like the one in the RSUI policy, in some cases identical to the RSUI policy, and found that no ambiguity exists because the term related itself. If a term is undefined in a policy, it's supposed to be given its normal and ordinary meaning. And inherent in the word related is a logical or causal connection. And the first district in the Howard Hoffman case found that the related claims provision was unambiguous and applied to relate multiple claims. The same is true of two federal court cases, both out of the Southern District and the Northern District of Illinois, in which the courts determined that there is no ambiguity in the term related. And that's all we're asking the court to do here today, is to find that the term related is unambiguous and should be applied such that the dove for case is related to any of the prior dove for cases, would serve to put it before the RSUI policy period. How is the complaint in the federal court for John Doe 4 related factually? Aren't they very similar? I'm sorry? One, two, and three cases, those complaints, how was the John Doe 4 complaint in the federal court language? Was it similar, identical, or very dissimilar? In most cases, the language was completely identical. The only difference being the years of abuse suffered by each Doe claimant. So there are examples in our opening brief of paragraphs taken from each of the four Doe complaints in which they're identical, but for the fact that Doe 1 was abused from 1994 to 1996. And Doe 3, for example, was also abused in the same time period as Doe 4, allegedly from 2005 to 2008. And they're filed by the same law firm. Everything in this case points to the logical and causal connection that these cases are all related. And they're all premised, importantly, on the district's failure to act. They're not premised on what Hawkins did to these individuals. It's about the district ignoring the known reports of abuse. And Judge Rosenstengel, who presided over the Doe 4 case, found as a matter of law that the school district was deliberately indifferent to the known reports of abuse no later than 2006 when Doe 4 became a student at the school district. And that covers the same time period as Doe 3, who filed his complaint in January of 2012. It's the same time period, it's the same allegations, and it's based on the same theories of liability. And if those cases cannot be related, then related claims provisions would have no import in any claims-made policy. It doesn't depend on the exact timing of when the policy was in existence and renewed. I'm not going to make this question clear, but you say that the John Doe 4, Judge Rosenstengel made this finding, but when should the insurance company have known that? In terms of when should we have known when three prior claims were filed? In this case, again, like I said, there was 134 discreet school districts, and so the only tipping off for RSUI that there were three prior cases is when the fourth case was filed, because when you see Doe 4, the heading of a complaint, it's pretty obvious that Doe's 1 and 3. Why didn't it have been 1, 2, and 3? Because we were not the insurer at the time. That's what I'm asking. Yes, yes. The timing, the timing is critical. The timing is critical. And in this case, the district admits that it did not tender any of the three prior cases to its then directors and officers carriers, which may have preserved coverage. I can't say, and I don't want to speculate, but Doe 1 should have been reported to the insurance company that was insuring the district in June of 2010, and the same goes for Doe's 2 and 3. They reported their commercial general liability carrier, who is still a defendant in the underlying case here, but they were never reported to a directors and officers carrier or any claims made carrier. So I take your point, Your Honor, but in this case, RSUI only issued that policy for 2013 to 2014. So to the extent that we look to the plain meaning of a term, and the only term, it's also important to say, the only term the district takes issue with in the entire provision is the word related, and to argue that that is somehow ambiguous. But again, the term related, inherent in it, and the dictionary definition states that there is a logical or causal connection. In this case, the logical or causal connection is the failure by the district to terminate Hawkins or to take any disciplinary action such that he was allowed access to future victims. So RSUI believes in the worst day that the Doe 4 and Doe 3 cases are very clearly related because it involves two claimants abused at the same exact time. So it necessarily is the same negligent supervision at Hawkins that runs throughout those two complaints. And with that, it's clear that there is no ambiguity in the related claims provision, and if appropriately applied, it should serve to relate the Doe 4 action back to any of the three prior Doe actions. And as a condition of coverage in the RSUI policy, it only covers claims first made in that policy year. Now as to the no loss doctrine, outboard green, the Illinois Supreme Court was very clear that insurance by its nature is for contingent risks. And it's a common law doctrine that the RSUI policy did not contract around. The court in outboard green clarified that the no loss doctrine is referred to by several different names. It could be a known risk, a loss in progress, or a known loss, but they felt that known loss most adequately described the doctrine. And in the trial court, during the summary judgment argument, the judge, in fact, conceded that the Hawkins-related matters constituted a known risk, which is in the trial transcripts, but she did not feel that that rose to the level of a known loss. But RSUI submits that the way that known loss is characterized in the outboard green case, that a known risk falls squarely within that ambit. But also, a known loss is that which is a loss that is substantially probable in the coming policy years. And it's clear that when the district received the Illinois State Police Report identifying, again, as many as 19 victims, and when it had been sued on three prior occasions by victims of Hawkins, that there was a substantial probability that it would face more lawsuits in the future based on this Hawkins-related conduct. And the lower court erred in its November 2016 ruling that the known loss didn't apply because the court relied on both outside authority, Connecticut authority specifically, in coming to that decision, and also asserted that the district had nothing more than a mere suspicion that Hawkins committed improper acts or that there would be more victims. And the lower court... 46 or 29? I'm sorry? You said November 26, 2016 order. Was it 26 or 29? It's the November 2016 order. I'm not... Oh, okay. I misunderstood. Yeah. It's November 29. Okay. Yeah, November of 2016. There's also a November of 2015 order, so I'm trying to keep it clear. There's a lot of procedural history in this case. But the lower court took at face value Freeberg's denial that it had anything more than, again, that mere suspicion of Hawkins-related conduct, and that was as of the time the RSUI policy was issued in 2013. But RSUI submit that Judge Rosenstengel's September 2017 order laid that argument there in finding that, quote, school officials had actual knowledge of Hawkins-alleged misconduct and the risk he posed to male students before Doe 4 became a student in the district in 2006. And the other important point is that the known loss doctrine only serves to bar coverage for that which is a known loss. And so in this case, under the RSUI policy, only the negligent supervision as to Hawkins would be carved out of the RSUI policy based on the known loss doctrine. And Freeberg argues, or the district argues, that the RSUI policy contracted around known loss by virtue of additional policy provisions. And the first district in Liberty v. Resurrection stated that there's no support for a finding that a policy provision can replace the common law known loss doctrine. And nothing states that known loss would not apply even if there is a policy provision that contains a specific exclusion addressing a known claim. So we submit that the known loss doctrine applies to the RSUI policy and that it's clear that based on the three prior lawsuits and Judge Rosenstengel's finding of deliberate indifference that anything arising in the RSUI policy period should have constituted a known loss. And the trial court's failure in this error, it should be corrected. And finally, RSUI has two different policy provisions that would otherwise exclude coverage for the DOE-IV action that the trial court found did not apply in this case. The RSUI policy excludes sexual molestation and sexual abuse of children, and the RSUI policy also excludes bodily injury, both of which were alleged to have occurred in the DOE-IV action. In this case, there are no exceptions to the exclusions that apply, and the district court should have applied or, excuse me, the trial court should have applied those exclusions to find that the RSUI policy completely barred coverage for the DOE-IV action. How did the trial court address those issues? The trial court found that the allegations, I believe, of sexual harassment, of which the district did not actually participate, constituted an employment practices wrongful act or that the violation of Title IX constituted an employment practices wrongful act, which is an exception to the exclusion. However, the policy provision that the trial court relied on specifically states that the definition of wrongful act is amended to include Title IX violations, which is the only thing that the plaintiffs were actually found to have committed in this case, was a Title IX violation for deliberate indifference. That was by Judge Rosa's single. Right, that was Judge Rosa's single's order, but that underlying liability is what the policy would potentially cover. And so the policy itself, all employment practices wrongful acts are wrongful acts, but the reverse is not true. And so the Title IX violation, being a wrongful act, does not fall within the exceptions to the exclusion for employment practices wrongful acts. Okay, you've lost. I'm trying to think quickly in order to get done. Sorry. The Title IX indifference that was found by Judge Rosa's single as to free her, is or is not an exclusion under the sexual molestation provision. So under both the bodily injury and the sexual molestation exclusions, there is an exception, and that exception is for employment practices wrongful acts only. And the definition of wrongful act was amended to include Title IX violations. So the exception to the exception is Title IX. No, Title IX does actually not fit within the exception. Title IX is part of the broader overarching wrongful acts, whereas you have the subset of wrongful acts for employment practices. And Title IX is not an employment practice per the definition in the policy. So Title IX is covered? No, Title IX would be covered as a wrongful act. However, what we're saying is that the exclusions bar coverage, because while Title IX may apply, the case is also arising out of alleging or based upon sexual abuse or bodily injury. And those broad exclusions serve to bar coverage here, and the only exception would be those employment practices acts of which Title IX is not part. So RQI will defer to its brief for a discussion of the remaining issues, but the overarching request that we made of this Court today is to overturn the decisions by the trial court and enter judgment in favor of RQI, finding that the related claims provision is not ambiguous and applies, the Doe 4 claim constitutes a known loss, and that the RQI policy provisions bar coverage in this matter. Therefore, RQI had no duty to defend or indemnify the plaintiffs in this matter. Unless there are any other questions, I'll come back and rebuttal. I do have one. Yeah, of course. So in the briefs, the plaintiff is asking that your client indemnify for a verdict amount. That verdict arose by the whole case? It was a settlement of the federal case. They took the case to trial, but no verdict was ever actually issued. They settled the case before a verdict came down. Okay. Now, Hunter Mutual is also in this case, and so the record is clear, they're not on appeal here, correct? Correct. So hypothetically, if the court found there was error and vacated all of the findings as to your client, would there be coverage or not coverage under Country Mutual? I'm not sure that this would play between Country Mutual and RQI. Yeah, so Country Mutual is the commercial general liability carrier, and they issue policies on an occurrence basis, and so their policies date back to the 2006 to 2009 period that Doe 4 was actually a student in the school. And so Country Mutual has funded the four prior settlements with other Doe plaintiffs. There's one plaintiff who didn't actually file a lawsuit, but there were four prior settlements before RSUI issued its policy, and there's been coverage under those Country Mutual policies. And so there's no real connection between the two but for to say that the timing that the Doe 4 complaint was filed puts it in the 2013 claims made period, but the allegations date back to when Country Mutual insured the district in the earlier years. And so Country Mutual, the orders against RSUI do not reference Country Mutual. Vacating those orders, I believe, would have no impact on Country Mutual, although I'm not sure about the procedural posture of the case against them right now. Once we took appeal, we haven't been actively involved in the case. So Country Mutual, did they insure this entire Prairie State Trust? I'm not sure. I think that they issued their policies directly to Freeburg. Okay. But as far as your client goes, your client issued to a consortium, if you will. Yes. And then your client relied upon each individual school district to fill out an application or some kind of document that would have alerted your client to any issues in the policy. Is that what I'm understanding? I believe that's correct. The application is kind of a mishmash of 134 different districts answering. Well, how would your client know? I mean, you want us to find that there was related claims, but how would your client know about 1, 2, and 3, for example, but for the fact that Freeburg would have to fill something out? Freeburg would have to fill something out or affirmatively disclose something of that effect. Go ahead. I think they paid over $5 million in prior settlements, and that should rise to the level of disclosure to an insurance company regardless of whether it's on the application, which I think is embodied in the Illinois case law. And importantly, we're not asking the court to determine that there's no coverage because the claim is related. We're asking the court to relate the claim back to the prior policies that would have potentially given coverage to this, for which Freeburg never tendered the first three complaints. We're not saying that there would be no coverage for this case. What we're saying is that it should relate back to the prior years in which those claims first arose. It just won't be covered by our act. Correct. May it please the Court, Counsel. Tom Kelly on behalf of Appellees, Freeburg Community Consolidated School District No. 70, Herschel Parish, Clarence Hagey, Lawrence Maggs, who I would likely refer to collectively as Freeburg throughout my argument. First, I would like to touch upon the extrinsic evidence that was discussed in RSUI's argument. RSUI ignores their own failings in their underwriting process. They make the claim that Freeburg failed to disclose the prior DOE claims. However, in the loan applications provided to Freeburg prior to issuance, there was nowhere to include information related to prior pending or threatened claims. RSUI argues that because it insures 134 school districts through PSIC, that's not feasible for them to discover potential existing claims against each district before issuing the policy. What about her argument that because you had paid almost $5 million in claims, you had the duty to disclose? There was nowhere for Freeburg to disclose that. There's an application for them to fill out to obtain this policy. There's nowhere on that application to fill in any sort of that information. Nothing that says prior claims? Correct. You know, RSUI, they make this claim that it wouldn't be feasible for them to do so. I mean, it could be as simple as check boxes on the application. Are there any prior pending claims? Yes or no? If no, move along. If yes, red flag. We know to investigate this thing or disclose everything else that's going on. That wasn't the case here. There was nowhere for Freeburg to initiate that disclosure of information on this boilerplate application that was provided to them. And then as far as the brokers go and their prior knowledge of these issues, and we mentioned this in our brief, based on the policy language outlined in the brief, the opinions or expectations of PSIC or Arthur J. Gallagher, whether or not they believe there should or should not be coverage, their opinions and expectations of non-coverage because they are non-parties, that's irrelevant and doesn't have any bearing on this coverage dispute. Now, moving on to the related claims provision, the trial court correctly ruled that the related claims provision in the RSUI policy was ambiguous. For it to be ambiguous, there needs to be more than one reasonable interpretation. RSUI argues that Freeburg failed to provide a reasonable alternative interpretation. However, this doesn't require an entirely separate and distinct hypothetical to show that there is a reasonable alternative interpretation. The most reasonable alternative interpretation is the one the trial court found, in which it found that any connection between prior Doe actions and the Doe 4 action is too tangential to be considered an adequate connection to trigger related claims limit on coverage. So the most reasonable alternative interpretation here is that the Doe 4 claim is too far removed from the prior Doe claims, and thus the related claim provision in RSUI's policy is ambiguous. Even if this court would require an entirely separate and distinct hypothetical to show a reasonable alternative interpretation, the trial court considered such a hypothetical in oral arguments prior to its ruling on the issue. And that's the truck driver hypothetical, again, that we laid out in our brief. And there, basically, the hypothetical was, say you have a truck driver behind the wheel for longer than the federal regulations allow.  Ten years go by, no further accidents, nothing in way of him disobeying his laws, for example. Ten years later, he's behind the wheel again for longer than the federal regulations apply, causes another accident. RSUI is boldly making the claim that those two separate accidents, ten years apart, with no connection in between for that ten-year period, would be considered a single claim under the policy. On top of that, the trial court even included its own hypothetical in its order dated October 31, 2018, expressing another reasonable alternative interpretation of the policy language. There, the trial court states, if a driver were to be intoxicated and were to injure another person in an accident, does that mean that another person injured by that same driver five years later, while again in an intoxicated state, would be deemed to be the same claim as the first accident? Even though the facts are similar and the perpetrator is the same person, surely that second accident would not be treated as a single claim with the first accident or deemed to be related to the first accident. So, I mean, there's three... Do you really think those hypotheticals are fair considering the circumstances where you have 19 potential sexual abuse cases with one actor? I mean, whether or not the hypotheticals are fair isn't the question. It's whether or not... It is the question. I understand. It's whether or not there's alternative reasonable interpretations. Here, I mean, RSUI in a reply brief is stating in the truck driver hypothetical that, yes, in that situation, even in that outlandish situation with the 10-year gap in between those accidents, they're claiming that that should even be a single related claim based off their policy language. And RSUI argues that the language of their related claims provision is nearly identical to other similar provisions that have been deemed unambiguous. However, none of the examples cited by RSUI include the overly expansive and inclusive language included in RSUI's policy of or any way involving. They have language in there, or in any way involving the same or related facts, circumstances, situations, transactions, or events. That all-encompassing phrase, or in any way involving, it leaves no bounds to how expansive the RSUI related claim provision can extend. Thus, leaving it ambiguous. Moving on to the known loss doctrine, RSUI relies on this outboard marine case. Outboard marine reads the known loss doctrine may be invoked if the insurers demonstrate that outboard marine knew or had reason to know at the time it purchased the CGL policy that there was a substantial probability that loss or liability would ensue due to the PCB contamination for which it is seeking coverage. Now, the last question, for which it is seeking coverage, is important. As I stated in outboard marine, the question was not whether outboard marine knew it was discharging a pollutant into the environment. Similar here, the question is not whether Freeberg knew that Hawkins had committed prior acts of sexual abuse. Rather, the trial court correctly found that RSUI failed to prove that Freeberg knew at the time that it obtained the RSUI policy that there was a substantial probability that loss or liability would ensue due to Hawkins' abuse of Doe 4 during the policy period. Based on outboard marine... Mr. Kelly, that's not exactly what the court said, and that's one of the issues I wanted to ask you about. It's in the court's order at A707. It says that there was nothing to suggest the insurers had anything more than a suspicion that the alleged perpetrator had committed improper acts. Even with the filing of suits by previous Does, there would be no more than a suspicion that anyone had an actual loss. Do you agree with that? I mean, is that the standard near suspicion when you've got 19 potential victims identified by the Illinois State Police? Well, Your Honor, I mean, in the way that we read outboard marine is that it's for, and again, that's when I relate back to this for which it's seeking coverage language, and this is kind of where the related claims and the known loss kind of are intertwined to a certain extent. There was a case that we cited, the First District case, Roman Catholic Diocese, where they say negligent supervision is or can be discreet rather than a unity act. So even though they may have had knowledge or a suspicion of these prior acts, that still isn't enough to apply the known loss in this situation as it relates to Doe 4 for the case for which it is seeking coverage. And again, the court went on to address this again in an order dated October 31st, 2018. And so based on that summary judgment order, wasn't it? I believe so, Your Honor. In that order, the court, as the trial court pointed out, nothing in Judge Rosenstein's order indicates that the plaintiff knew that abuse had been perpetrated upon the defendant, John Doe 4, at the time it took out the policy at issue. Although the plaintiff should have known that the district employee posed a risk, they were not aware of the fact that there was yet another victim out there. At oral argument of the motion for summary judgment, the attorney for our issue had conceded the fact that she had not determined during discovery that the plaintiff knew that John Doe 4 was a victim of sexual abuse when the policy was issued. So again, it's what their knowledge was in relation to John Doe 4, not what their knowledge was with relation to Hawkins' prior acts of sexual abuse. Let me ask you, what is the effect of any between this claims made policy and the occurrence policy of country mutual? Is there concurrent coverage, in your opinion? State that again, Your Honor. I apologize. So this is a claims made policy? Correct. And the country mutual policy was evidently an occurrence policy, right? So it's when the occurrence arose? I believe so, Your Honor. As opposed to when the claim was made? I believe so, Your Honor. I was not trial counsel for the underlying claims in the trial court. I know that this policy is a claims made policy as far as the one that's at issue today. And the claim was made within the claims made policy period. And so as far as the interaction between the country mutual policy and the RSUI policy, I can't speak to how those two would interact depending on how this court rules. All I know is that this is a claims made policy. This claim was made within the policy period. And there should, based upon the trial court's rulings, there should be coverage for this within this claims made policy. Let me expound on Justice Kate's question and just make it real simple. Is it your understanding that if we let RSUI out of this case, or out of, remove their liability, is State Farm, I'm sorry, is Country Mutual still going to be liable for these damages? I cannot make, I cannot, I can't make that statement. As far as how that would play out in trial court, after the fact, I cannot speak on that. I wasn't, again, I wasn't trial counsel. And so I haven't dealt with the Country Mutual side of the case. Moving on, RSUI, their policy written as it supplants the known loss doctrine. RSUI includes these exclusions number 8 and 10 in the policy. Basically, exclusion number 8 states that known losses tendered to prior, you know, carriers are excluded. And then exclusion number 10 basically states that known losses subject to pending litigation on the inception date of the policy are excluded. There needs to be meaning to every provision of an insurance contract. However, if the court applies the common known loss doctrine to this policy, exclusions 8 and 10 are rendered unnecessary and devoid of any meaning. And therefore, there would be ambiguity within those provisions. Also, Friedberg makes the claim that Title IX coverage within the RSUI policy contracts around the known loss doctrine. Title IX, by its nature, requires prior knowledge. RSUI's interpretation of the known loss doctrine would essentially exclude any potential Title IX claims because too many things have to happen within a claims-made policy period. You have to have the discriminatory and wrongful act. You have to have notice to be insured of the act. You have to have the insured's failure to take corrective action. You have to have a subsequent discriminatory or wrongful act. You have to have injury resulting from the act. And you have to have a claim. Unless each of these events occur within a single policy period, the insured could raise the known loss doctrine to disclaim coverage using RSUI's theory. Clearly, this wasn't RSUI's intention, since they separately and specifically included coverage in the policy for Title IX claims. Additionally, as far as public policy goes regarding this known loss, neither RSUI or Friedberg has pointed to a single case where the known loss doctrine has been used to invalidate coverage in a negligent hiring, negligent retention, or negligent supervision claim. No such case has been cited because it's not the way the common law known loss doctrine has been used. If courts apply the common law known loss doctrine the way RSUI is applying it, negligent retention, supervision, and hiring cases would cease to exist. Now, moving on to the Title IX and employment practices wrongful acts provisions, RSUI argues that the third-party coverage, including Title IX awarding endorsement, does not include alleged violations of Title IX in the amended definition of employment practices wrongful acts. Again, RSUI attempts to mask the poorly written insurance contract that sold to Friedberg. The Title IX endorsement adds third-party sexual harassment and third-party discrimination as covered employment practices wrongful acts. Third-party sexual harassment and third-party discrimination, they constitute Title IX violations. The fact that the sexual abuse with EPL carve-back clause specifically contemplates that an employment practices wrongful act may allege sexual abuse, molestation, child abuse, and neglect is further proof that RSUI policy considered Title IX as an employment practices wrongful act. And as noted by the trial court in its August 18, 2017 order, if it's determined that the clause is referencing third-party sexual harassment and third-party discrimination did not extend coverage expressly to Title IX claims as employment practices wrongful acts, the court would find that the clauses were ambiguous. Specifically dealing with the third-party sexual harassment clause, RSUI argues that its sexual abuse with EPL carve-back exclusion wholly excludes coverage. However, the language of that exclusion contains a carve-back to state that the exclusion shall not apply to any claim alleging an employment practices wrongful act. RSUI's own policy states that employment practices wrongful acts include any alleged third-party discrimination or third-party sexual harassment, which is exactly what DOE IV alleges in the underlying Title IX action. Moreover... So as to that one count that would be covered potentially, how about the bodily injury count? So as far as the bodily injury count goes, the bodily injury exclusion states that the bodies shall not apply to allegations of mental anguish or emotional distress made solely in connection with an employment practices claim. DOE IV directly alleged mental anguish and emotional distress within its Title IX claim against Reber. As with the sexual abuse with EPL carve-back clause, the Title IX allegations are employment practices wrongful acts in the context of third-party discrimination and third-party sexual harassment as defined by the policy. Thus, the exclusion to the bodily injury exclusion applied and coverage is appropriate. So if someone alleges a sexual abuse where you have injury, emotional distress, for example, not harassment, you say there's still coverage? Correct. Under the employment practice? That is correct. What's the use of having this exclusion then? What does this apply to? Well, and that's the thing. So, I mean, basically, you either have to read the policy in one of two different ways. Either Title IX falls under the employment practices wrongful acts, and then all of these exclusions, you know, there is coverage underneath all of these exclusions. If you don't think that Title IX, if you don't find that Title IX is an employment practices wrongful act, then there is ambiguity throughout the policy because third-party, you know, third-party sexual harassment and discrimination in and of themselves are essentially Title IX. So it's either Title IX is considered an employment practices wrongful act, and if it's not, then it just creates ambiguity throughout all of these exclusions, which should be determined in favor of coverage. But this policy that was being purchased was a commercial liability policy, right? It wasn't a personal injury policy, or did it have an endorsement for that? It does. I believe, Your Honor, I believe it does cover personal injury. I believe it does, Your Honor. I don't have the policy in front of me. Because generally when a school district is buying a commercial policy, you're not really buying a personal injury. You can add workers' compensation endorsement. You can add personal liability, fall on a playground, things like that. You can add all of that. It just depends on the language of the policy. Correct.  I was going to ask about this claims made thing, though, because in the 12th Order, and I'm referring to the October Order, it confuses me where it says that all four students should be treated as a single claim. Is that what's being argued here, is that under the claims made policy, all four are one claim? I don't understand that. And that's what RSUI is arguing here, is that basically that all four claims should relate back to the initial DOE claim. That's the position that RSUI is taking here. That is not the position that Freebird is taking, that they should be looked at as four separate individual claims. Okay, Mr. Kelly. Thank you. Thank you. Just a few points on rebuttal. First, plaintiffs are discussing the idea that acts that are too tenuous to be connected might not be related. And RSUI does not argue that point because in the term related, by its definition, there must be a logical or causal connection. And Judge Rosenstengel, in presiding over the Market Street bank shares case, which is currently on appeal to the Seventh Circuit, the same judge, by the way, who presided over the DOE IV case, said that context is critical in these cases, and there may be cases where it is too tenuous to determine that they're related. But that in itself does not make the provision ambiguous. And to Your Honor's earlier question, yes, RSUI believes that these are a single claim for purposes of negligent supervision. It does not discuss whether or not they are. That's a liability issue. Correct. Okay. But in order, they're using it in terms of whether or not it was related. And I kind of got lost on that. And that's when they go into these hypotheticals, the driver thing. I didn't understand all. And I was going to attempt to bear that out on rebuttal here, is the two hypotheticals advance. I'll stick to the driver case because I think that that's the one that has a bit more traction, puns intended, throughout this. The driver cases stand for the proposition that if a driver gets in multiple car accidents 10 years apart, that they would be related under the RSUI policy. But it's ignoring the actual premise of liability that we have in this case, which is negligent supervision. So to the truck driver idea, where the truck driver is consistently going over the federally regulated number of hours he's able to drive every day, if the company knows about this and subscribes to that and he gets in multiple accidents as a result of it, at some point the company should know that those, you know, if there's a pattern of accidents. Here we have a pattern of abuse by Hawkins. And the actual liability here is the negligent supervision by the district. It's not the discreet acts of abuse committed by Hawkins. So, yes, to bear out their hypothetical, if the company itself who hired the truck driver and is managing him fails to take corrective action when they have reported repeated instances of abuse of the hours, then that's the error. So the focus, though, in the hypothetical now that I think I understand, is the focus is on what the company knew at the time as far as negligence. It's not these accidents that are 10 years apart. Correct. Because those auto liability policies are generally written on an occurrence basis, like the country mutual policy here, where 10 years apart, that policy 10 years later would likely cover the auto accident itself. But the company's liability is what we're actually looking at here. And that's why these claims are related. So to bear out those hypotheticals, there still has not been a reasonable alternative application of the related claims provision here. Can you answer Justice Barberis' question in that it kind of followed behind the claims versus the occurrence policy? Mr. Kelly wasn't in it at the trial stage. I assume you were. Yes. Could you repeat the question? Simply whether or not if RSUI is released from liability by us in this case, is there still coverage, in your opinion, by country mutual? I don't frequently work with the commercial general liability coverage, so I can't say whether or not the trial court would find that there is coverage. But Freeburg is certainly seeking coverage against country mutual for this claim. And likewise, country mutual has paid the four prior DOE-IV settlements, to the best of RSUI's knowledge. Okay, three or four? There was a fourth claimant that didn't actually sue. So there are four settlements but only three prior lawsuits. And those all were based on identical or very similar fact patterns as DOE-IV? It's the exact same complaint but for the years of abuse. And so the country mutual policy spread from 1991 to 2009 or whenever they were on the risk. And in those cases, yes, we would contend that country mutual is the more appropriate insurer here because bodily injury is specifically covered under those types of policies. And that's why I believe Judge McGlynn presided over a prior DOE-IV case in St. Clair County to find that the country mutual policy did cover a prior DOE action. So there is a prior pattern of findings against country mutual in that respect. So there was a deck action with Judge McGlynn? Yes. I'm not sure which DOE case it is, to be perfectly honest with you. But there is an order against country mutual finding that its policy did provide coverage for one of those earlier DOE actions. And so RSUI submits that it's not leaving its insured without coverage here but that it should be more properly placed with the commercial general liability carrier who covers bodily injury because the DOE-IV action relates back to a time period before RSUI was ever on the risk. As to the known loss, quickly, counsel made a point that we need to look at the matter for which Freeburg is seeking coverage or plaintiffs are seeking coverage. They're seeking coverage for their negligent supervision. And we submit that the actual identity of the claimant is not important here. It's that they knew of three prior lawsuits that were negligent supervision claims and more were likely to arise out of the known loss doctrine. Unless there are any other questions. Thank you very much. Thank you. Okay. This matter will be taken under advisory and we will issue an order when in support.